398 So.2d 639 (1981)
Kathryne GRIFFIN et al., Plaintiffs-Appellants,
v.
Sandra K. BETHARD et al., Defendants-Appellees.
No. 8062.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
*640 Eugene P. Cicardo, Alexandria, for plaintiffs-appellants.
McLure & McLure, John G. McLure, Alexandria, for defendants-appellees.
Before DOMENGEAUX, CUTRER and DOUCET, JJ.
*641 CUTRER, Judge.
Plaintiff, Kathryne Griffin, and her husband filed suit for damages incurred as a result of a rear-end collision which involved three vehicles. Plaintiff had stopped her vehicle on Louisiana Highway 71 in the town of Tioga and was preparing to make a left turn. Betty Richey stopped her vehicle behind the plaintiff. A third vehicle driven by defendant, Sandra Bethard, failed to stop, struck the Richey vehicle in the rear and caused the Richey vehicle to strike the rear of plaintiff's car. Defendant and her insurer, United Services Automobile Association, were made defendants.
The suit was tried by a jury. At the close of the evidence the plaintiff moved for a directed verdict on the question of liability. This was not opposed by the defendants. The trial court granted the directed verdict, leaving only the question of quantum to be decided by the jury. The following verdict was returned by the jury:
 "We, the jury, find for the plaintiff,
 Charles Griffin and Kathryn Griffin, in
 the following amounts:

 Special Damages $ 700.00
 _____
 General Damages $ - 0 - "
 ______

From a judgment rendered pursuant to the verdict, plaintiff appeals seeking an increase in the special damages and also seeking general damages.
The evaluation of damages, arising out of plaintiff's claims of injuries, are complicated by an unusual factor. Plaintiff had been involved in two rear-end collisions occurring within six days of each other. She was involved in a rear-end collision on January 1, 1979. She saw Dr. Rush the following day, complaining of neck pain. Dr. Rush started treating her conservatively for this neck problem. She was then involved in the second rear-end collision on January 6, 1979. She continued her neck complaints and, also, eight days later, developed back problems. This suit is for damages arising out of the second accident, January 6, 1979.
In her suit she seeks medical expenses and general damages for her neck and back problems, alleging that these problems were attributable to the second accident which occurred January 6, 1979. The jury was faced with the problem of determining whether plaintiff's neck and back problems were attributable to the second accident or whether they were caused in whole or in part by the first accident.
In order to resolve the issues we deem it necessary to discuss the cervical and lumbar problems separately.

CERVICAL
The day following the first accident, January 2, 1979, plaintiff consulted Dr. Robert K. Rush, complaining of neck pain. Dr. Rush testified that he examined plaintiff and found some spasm of the cervical region. He prescribed medication to relieve the pain. Dr. Rush saw plaintiff on January 8, 1979, two days after the second accident. Plaintiff was still complaining of pain in the cervical region. The testimony of Dr. Rush gives us no indication that either the complaints or condition of plaintiff's neck were any different after the second accident than before. He continued his conservative treatment.
Dr. Rush next saw plaintiff on January 15, 1979. At this time she was complaining of neck and back pain. She stated that the onset of the back pain had begun the day before. Insofar as her neck complaints, she had begun improving. He treated plaintiff after this for back complaints, for, at this point, her neck complaints seemingly subsided.
In her testimony, plaintiff candidly admitted that she didn't notice any change in her neck condition after the second accident. She testified as follows:
"Q. Was your neck any worse after the the second accident?
"A. I don't think so.
"Q. O. K. So it continued the same, as far as you know, between the first accident and after the second accident?
"A. Yes."
In view of the testimony of Dr. Rush and plaintiff, we conclude that the second accident had little, if any, effect on the existing *642 cervical problem. This factor must be considered in assessing plaintiff's damages.

LUMBAR
The first time the lumbar pain manifested itself was eight days following the second accident. Plaintiff stated that she had never had any back problems prior to that time. As a result of her back complaints Dr. Rush hospitalized plaintiff on January 17, 1979 for a period of three days. Plaintiff was kept in pelvic traction during these three days to relieve the back pain. Dr. Rush saw plaintiff again on January 22, 1979, after she was released from the hospital, and she told him she was feeling much better. Dr. Rush saw plaintiff the last time on April 17, 1979, at which time he felt she had recovered. He felt that her back problem could be related to the second accident.
Plaintiff testified that later her back problems began to worsen and her attorney suggested she see Dr. John Patton, a neurosurgeon. Dr. Patton testified that he saw plaintiff the first time on May 24, 1979. He examined her and all tests were normal. He found some spasm and diagnosed her condition as lumbar strain. He prescribed medication. Dr. Patton next saw plaintiff on August 14, 1979. Plaintiff stated that she had slipped and fallen a few days prior to the visit and that this fall had worsened her pain. He prescribed medication. He stated he could find no objective signs that would account for her continuing complaints of pain. Dr. Patton saw Mrs. Griffin on November 12, 1979. She was complaining of back pain but Dr. Patton could not determine any cause for same. His examination revealed no abnormalities.
Plaintiff went to work for Pinecrest State School in Pineville, Louisiana, in October 1979. She signed a pre-employment examination form. One question asked if she had a back injury and she answered "No." She was working at the hospital at the time of trial and was apparently having no difficulty performing her duties administering therapy to the children.
The evidence reveals that it is more probable than not that plaintiff's lumbar strain was caused by the second accident. She had never had back problems before January 14, 1979, which was after the second accident. Having come to this conclusion the plaintiff would be entitled to those damages attributable to the lumbar strain.

SPECIAL DAMAGES
We now turn to the jury verdict of $700.00 for special damages to determine whether such verdict was clearly wrong.
The medical expenses introduced into evidence total $1,051.64. These expenses are as follows:

Tioga Medical Clinic (Dr. Rush) $ 119.00
Tioga Pharmacy (Drugs) 121.14
Alexandria Neurosurgical Clinic
 (Dr. Patton) 167.00
Doctors Hospital 644.50

The jury awarded $700.00, or approximately 70% of the total, as special damages. These damages were medical expenses. The only evidence of special damages in the record is the medical bills listed above. Plaintiff contends that all medical expenses ($1,051.64) should be awarded. We disagree with this position.
The medical expenses above represent the total expenses for the cervical and back treatment after the second accident. The evidence reflects that little, if any, of the medical expenses for the cervical problem could have been allowed as that problem was principally caused by the first accident.
Plaintiff proved with reasonable certainty that a major portion of the medical expenses was due to the treatment for the back injury. As we consider the fact that the two accidents and injuries were close in time and treatment for the cervical injury overlapped the treatment for the lumbar injury, we cannot say that the jury was clearly wrong when they allocated $700.00 for medical expenses which would be attributable to the injury received in the second accident. The jury award for special damages will be affirmed.

GENERAL DAMAGES
The jury made no award of general damages. An award of "0" as damages for *643 pain and suffering is not an exercise of discretion as to amount but is a refusal of an award. A jury cannot award special damages for personal injuries incurred in an accident and refuse to award any amount for general damages for injuries that present objective symptoms. Such an omission is an error of law and must be corrected on appeal. Brown v. Grigsby, 394 So.2d 847 (La.App. 3rd Cir. 1981); Robinson v. General Motors Corporation, 328 So.2d 751 (La.App. 4th Cir. 1976).
Following the second accident the plaintiff has had recurring pain in her lower back. Both doctors felt that the plaintiff suffered a lumbar strain. Plaintiff testified that she had to curtail some of her activities in order to avoid exacerbating the pain.
The testimony reveals, however, that the pain is neither severe nor constant. The plaintiff indicated that she will sometimes be free of pain for as long as several days. As of October 1979 she was employed, giving physical therapy at a state hospital, and is able to fully perform her duties. Her job application, filled out subsequent to the accident, indicates that she has no disability.
There has been no proof of discopathy. The doctors indicated that the duration of the plaintiff's pain is unusual for a strain, but Dr. Patton could find no objective symptoms of any neurological problems. He refused to rule out a bulging disc, but also stated that the pain was not significant enough to justify a myelogram to determine if there is, in fact, any nerve root irritation.
We find that plaintiff has proved a lumbar strain, more probably than not the result of the second accident. In light of all the circumstances, an award of $4,000.00 in general damages is adequate compensation.
For the above reasons, the judgment of the trial court is amended by awarding general damages in the amount of $4,000.00. In other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed against the defendant-appellees.
AMENDED AND AFFIRMED.