1BOWES, Judge.
Plaintiff-appellant, Paul E. Langlinais (hereinafter “Langlinais”), appeals a judgment of the district court awarding him $10,-500.00 in damages, plus legal interest, costs, and expert fees against defendants, Solon Automated Services, Inc. and Old Republic Insurance Company (referred to for convenience hereinafter simply as “defendants”). We affirm.
Langlinais was injured on September 14, 1988 when his vehicle was struck in the rear by a truck driven by Ronald Figueroa. Plaintiff filed suit against Figueroa, who was working in the course and scope of his employment, Figueroa’s employer, Solon Automated Services, and its insurer, Old Republic, as well as against his own UM carrier (who is not involved in the controversy before us).
The case was tried before a jury on March 1 through March 4, 1993. A verdict was returned finding that Figueroa was negligent, and that plaintiff was not. 12Figueroa’s negligence was determined to be a legal cause of part, or all, of plaintiffs injuries; the jury awarded $1,000.00 for past medical expenses, and $1,500.00 for past lost wages, but no recovery whatsoever of any general or other special damages. Plaintiff filed a post verdict motion for “judgment notwithstanding the verdict” (JNOV), for new trial or in the alternative, for additur. The trial court granted the JNOV, awarding plaintiffs an additional $8,000.00 in damages for pain and suffering. Finding that a JNOV as to one element of damages “may not be found appropriate,” the court conditionally granted the motion for new trial permitting defendants to consent to an additur in the amount of $8,000.00 as an alternative to a new trial. Plaintiff appeals the final judgment.

ASSIGNMENTS OF ERROR

Langlinais assigns the following errors:
1. The trial court erred in allowing the jury to consider a reported decision in an unrelated case, in which case the trial court indicated that Langlinais’ treating physician had performed surgery to the detriment of his patient; the court erred in permitting *985 defendant-appellee’s counsel to distribute partial copies of this reported case to the jury, and in permitting defendant-appellee’s counsel to argue to the jury that his ease was proof that Dr. Watermeier performed unnecessary and detrimental surgeries.
2. The trial court erred in allowing defendant-appellee’s counsel to question Mr. Lan-glinais concerning his property damages, when no claim was made therefor, and in allowing unverified and incomplete estimates of property damage into evidence in connection with the argument of defendant-appel-lee’s counsel that since the property damage was minimal, Mr. Langlinais could not have a serious physical injury.
3. The trial court erred in permitting counsel for defendant-appellee to interject as evidence his own irrelevant, uncorroborated “medical testimony” and in permitting counsel for defendant-appellee to misstate the evidence, argue with ^witnesses and impugn their integrity, in a manner that prejudiced, confused, and misled the jury.
4. The trial court abused its discretion in awarding damages so low in proportion to the injury that it shocks the conscience. However, because of the foregoing errors at the trial level, appellant argues that this Court should order a new trial, or, in the alternative, a De Novo standard of review should be applied rather than merely adjusting the damage award entered by the jury and trial court.

UNDERLYING FACTS

On September 17, 1988, several days after the rear end collision, plaintiff sought medical help in the emergency room at West Jefferson Hospital. He had been experiencing a burning sensation in his neck, soreness and headache. He was treated there for a cervical strain and released. Plaintiffs attorney referred him to Dr. David Aiken, a general surgeon, who also diagnosed an acute cervical dorsal sprain. Dr. Aiken prescribed physiotherapy and gave Langlinais some injections, along with some pain medication. After several visits, by October 20, 1988 (according to Dr. Aiken), plaintiff had improved, had increased his activities, and Dr. Aiken discontinued physiotherapy treatments. By November 10 he had continued to improve, although he experienced soreness after a day’s work; on that date Dr. Aiken discharged him, noting on that date that plaintiff was- “working hard.” He had not seen any signs of a herniated disc or nerve root impairment, but would defer to the opinion of plaintiffs treating orthopedic surgeon (Dr. Watermeier).
In January, 1989, plaintiff began seeing Dr. Watermeier, an orthopedic surgeon, because he continued to have pain, in the testimony of Dr. Watermeier, “... and it was aggravated by his type of work, pushing and pulling and trying to do his work as a carpenter. He said that lifting increased his pain.” Langlinais also complained of headaches. Following an examination, Dr. Wat-ermeier diagnosed a possible cervical disc injury and recommended various diagnostic tests. Langlinais | underwent a CAT scan and an MRI, which latter test showed a herniated disc at C5-6. A cervical traction device was initially prescribed. By April, plaintiff had no neurological defects and no particular pain but, by May, he complained that he had intermittent pain at work in his neck and shoulder; after an examination, Dr. Watermeier felt plaintiff was stable with no increase in symptoms. By October, headaches had returned along with increased neck pain, and difficulty performing some activities. Dr. Watermeier gave him pain medication; by January of 1990, the headaches had become more frequent and he had increased neck and shoulder pain. He had a limited range of motion and the doctor suggested that surgery may be necessary if he did not improve. In March, 1990, following continued complaints, Dr. Watermeier recommended a discogram and a thermogram, which revealed a disc herniation at the C5-6 level. An anterior fusion was performed on April 20, 1990.
He did well following surgery until June, 1990, when a loud noise caused his head to jerk back suddenly, causing pain associated with numbness. Dr. Watermier felt the neck was still in a good position and in July released plaintiff to return to work. By February, 1991, plaintiff again complained of pain, and another MRI was performed in March of *986 1991, the results of which were inconclusive. Throughout 1991, plaintiff continued to have problems, and a second surgery was performed in November, 1991, at the same level, but to fuse the back of the neck. By February of 1991, plaintiff was stable. Dr. Water-meier stated that both surgeries were necessitated as a result of the accident in 1988, and awarded a “possible” 20% anatomical impairment to Langlinais.
Dr. Paul Frenselli, an orthopedic surgeon, examined plaintiff for the defendants several days prior to the first surgery and found no objective clinical findings of a herniated disc. The MRI performed for Dr. Watermeier, which was reviewed by Dr. Frenselli, indicated on the report itself a “patient motion artifact” which means that the plaintiff moved during the test, and which compromises and can render inaccurate test | ^results. Dr. Frenselli would have retaken the MRI and in the absence of definitive proof that there was a herniated disc, would not have performed the first surgery at that time. He did not believe that a second fusion from the back at the same level would have helped plaintiff since the first fusion was “very solid.” Dr. Frenselli stated that thermography was not an accepted diagnostic test, and discography was used “on occasion.”
Dr. Mark Juneau, also an orthopedic surgeon, examined Mr. Langlinais for the defendants in October of 1989, also prior to the first surgery. He also reviewed the MRI and concluded that Mr. Langlinais did not have a herniated disc and would not have operated on him at that time on the basis of his examination. Dr. Juneau also stated that thermography is no longer accepted by orthopedists and that within the last six months of trial, the American Academy of Orthopedic Surgeons went on record as stating that thermography had no value in the detection of ruptured discs. Dr. Juneau saw no reason to perform the second surgery at the same level.
Plaintiff testified that the initial physiotherapy had not been helpful, and he discontinued treatment with Dr. Aiken. He sought treatment with Dr. Watermeier for the continuing symptoms. After the first surgery he returned to work and while working, moved his neck so that he felt a sharp pain. Afterwards, he testified that his symptoms worsened and he began to feel numbness in his arms. After the second surgery he felt much improved. However, he is unable to work any longer in his profession as a carpenter. He is no longer able to engage in athletic activities, and is able to perform some household tasks with difficulty. Plaintiff missed three months of work after his first surgery, then worked until his second surgery. He did not return following that operation.
Other testimony, from plaintiffs wife, his foreman, an economist and rehabilitation counselors, need not be summarized for our purposes — because the issue ^before us is whether the jury and trial court correctly determined causation in relation to plaintiffs injuries.

ANALYSIS

The negligence of the defendant, Figueroa, is not at issue. The jury found that his negligence was a legal cause of “part or all” of plaintiffs injuries, and that plaintiff was not negligent. In awarding damages, the jury made an award for past medical expenses and past lost earnings, but no award for pain and suffering, loss of enjoyment of life, inconvenience, disability, etc.
Our courts have recognized that a jury cannot award special damages for personal injuries incurred in an accident and refuse to award any amount in general damages for injuries that present objective symptoms. See Evans v. Newton, 459 So.2d 586 (La.App. 5th Cir.1984); Curry On Behalf of Curry v. Allstate Ins. Co., 435 So.2d 1030 (La.App. 4th Cir.1983); Odendahl v. Wild, 418 So.2d 36 (La.App. 4th Cir.1982); Griffin v. Bethard, 398 So.2d 639 (La.App. 3rd Cir.1981); Brown v. Grigsby, 394 So.2d 847 (La.App. 3rd Cir.1981); Moss v. Security National Insurance Co., 350 So.2d 247 (La.App. 3rd Cir.1977), writ denied, 352 So.2d 239 (La.1977); Robinson v. General Motors Corporation, 328 So.2d 751 (La.App. 4th Cir.1976).
Labauve v. Central Mut. Ins., 491 So.2d 146 (La.App. 3rd Cir.1986).
*987 Therefore, the refusal of the jury to award any compensation for the pain and suffering which accompanied plaintiffs injuries is an error of law. Labauve, supra; Barfield v. Jacobs, 527 So.2d 555 (La.App. 3rd Cir.1988).
A JNOV is a proper procedural vehicle in which to award plaintiff damages for pain and suffering. Barfield, supra. We found in Clayton v. Dept. of Transp. and Dev., 599 So.2d 394 (La.App. 5th Cir.1992) as follows:
LSA-C.C.P. art. 1811 sets forth the mechanics for a motion for judgment notwithstanding the verdict. It does not set forth the grounds on which a trial court may set aside a jury verdict. However, the criteria for granting a judgment notwithstanding the verdict have been well established by the courts of Louisiana:
I7A judgment N.O.V. may only be granted when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict on the facts at issue. Alumbaugh v. Montgomery Ward & Company, Inc., 492 So.2d 545 (La.App. 3d Cir.), writ denied 495 So.2d 304 (La.1986); Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App. 3d Cir.), writ denied, 437 So.2d 1149 (La.1983). Further, the trial court may not weigh the evidence, pass on the credibility of the witnesses, or substitute its reasonable inferences or the facts for those of the jury. Id. at 1166. As a reviewing court, we must determine whether the trial judge’s judgment N.O.V. was manifestly erroneous. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985).
At pp. 396-7.
It is readily apparent that reasonable men could not have arrived at a verdict disallowing general damages after being presented with objective evidence that a physical injury occurred, for which the jury chose to award past medical expenses.
Having determined that a JNOV was proper, we must apply the standard for increasing the jury award. Our Supreme Court has determined in Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991):
Once a trial court has concluded that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded. In making this determination, the [trial] judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We are aware of some decisions which indicate that the trial judge should be limited by that constraint. See West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.1987), Barfield v. Jacobs, 527 So.2d 555 (La.App. 3d Cir.1988), Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988). However, we conclude that the better view is that expressed in Rickerson v. Fireman’s Fund Insurance Company, 543 So.2d 519, 523 (La.App. 1st Cir.1989), where the court stated:
“The Coco standard of review does not apply to a trial court’s review of a jury’s award. Therefore, after rendering the JNOV, the trial court should have rendered a de novo award based on his independent assessment of injuries and damages.”
I «The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.
The appellate court, in determining whether the trial court erred in granting *988 the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury’s damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco, supra.
[Emphasis supplied].
In the present case, the trial court granted the JNOV, holding thusly:
All right, the Court is going to rule on this matter now, and the Court is going to read its reasons for the ruling into the record.
Upon careful consideration of the Plaintiffs arguments and the Court’s notes and recollection of the trial of this matter, the following conclusions are reached:
One, the admission of the complained of evidence, i.e., that related to property damage, and the federal case excerpt, whether separately or together, did not effect the outcome of the trial.
In other words, the Court is convinced that the jury’s decision would have been the same even if such evidence had been excluded.
Two, the jury’s finding that the Defendant was negligent and that this negligence was a legal cause of Plaintiffs injury does not, under our law, require an award of all damages sought by Plaintiff, as is argued in his motion.
| ¡¡Three, the type and amount of damages that is awarded by the jury, which was $1,000.00 for past medicals and $1,500.00 for past lost wages is consistent with a determination by the jury that the injury caused by the accident at issue was minimal, with the remainder of the claimed damages arising form a subsequent independent intervening cause, for which the Defendants are not liable.
Four, that whether some injuries. (sic) found to have occurred, as here, it is error to fail to award compensation for pain, suffering and other intangible items of general damage.
* * * * * *
As outlined above, the Court does not find that the facts and inferences regarding special damages point so strongly and overwhelmingly in Plaintiffs favor that reasonable jurors could not differ on those items.
As regards to a lack of an award for general damages, however, the Court finds that the facts and inferences are overwhelmingly in Plaintiffs favor, such that reasonable jurors could not differ on the fact that this is abusively low.
Under Anderson versus NOPSI, 583 So.2d 829, Louisiana Supreme Court, 1991, this court’s independent assessment of the evidence supports an award of $8,000.00 for Plaintiffs pain, suffering, inconvenience, et cetera.
And Plaintiffs judgment, notwithstanding the verdict, is granted, to that extent. Also see Sumarall versus Sumarall, 612 So.2d 1010.
[Emphasis supplied].
Our review of the record convinces us that there is no manifest error in the well reasoned rulings of the trial court.
the portion of the federal case which plaintiff complains was erroneously admitted into evidence is not so inflammatory and prejudicial so as to have tainted every aspect of the trial and made, as plaintiff contends, an impartial assessment of causation and damages impossible. To the extent that it may have been error to admit it, Dr. Water-meier acquitted himself sufficiently on redirect examinátion so as to offset any possible prejudice which may have resulted.
| mFurther, our review shows that there was sufficient evidence before the jury for them to reasonably conclude, as the judge found, that the damages sustained by Mr. Langlinais were minimal with the remainder *989 of his damages arising from a subsequent intervening cause.
Our Supreme Court has recently reminded us in Stobart v. State Through DOTD, 617 So.2d 880, 882-883 (La.1993), as follows:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find | nmanifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
The opinions of defendant’s experts; the opinion of plaintiffs initial treating physician Dr. Aiken; and that of Dr. Watermeier, insofar as he opined that plaintiff was consistently improving through May of 1989 prior to a second accident on the job while moving a “gang box,” after which his symptoms became worse; the fact that plaintiff worked consistently following the accident, and even following the first surgery; — all support the reasonable findings of the jury and of the trial judge, that the original injuries caused by the accident in question were minimal.
The view of the evidence taken by the judge and jury was, in light of all the evidence, a permissible one and under Stobart, supra, cannot, therefore, be manifestly erroneous.
Thus, the first assignment of error has no merit.
With regard to the evidence of the property damage estimate, we find that such was *990 admitted without objection at the trial court and, as we have previously held:
Contemporaneous objection is required to preserve an evidentiary issue for appellate review. La Haye v. Allstate Ins. Co., 570 So.2d 460 (La. 3rd Cir.1990), writ denied 575 So.2d 391 (La.1991).
Chauvin v. Jefferson Parish, 595 So.2d 728 (La.App. 5th Cir.1992).
Accordingly, this second assignment of error is without merit.
With reference to appellant’s third assignment of error, we note that the “medical testimony” referred to by plaintiff involves questions regarding the utility of some tests employed by Dr. Watermeier. The other two physicians who testified opined that the tests had little or no value, and we do not find any statements or questions of counsel to be “testimony” or confusing to the jury. Furthermore, most of the statements attributed to defense counsel were made during closing argument; the jury was sufficiently charged that comments of counsel are not evidence; and in view of the evidence and testimony summarized hereinabove, we do not find that, nor does appellant show how, the actions of defense counsel in this regard prejudiced, confused, or misled the jury into its verdict. Therefore, this assignment of error is without merit.
Finally, the trial court is granted much discretion in fixing damages. Our standard of review on this final assignment of error is set out in Youn v. Maritime Overseas, 623 So.2d 1257 (La.1993):
In Reck v. Stevens, 373 So.2d 498 (La.1979), this Court commented on appellate review of general damage awards and on the “much discretion” in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the | ^particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular ease. It is only when the award is, in either direction, beyond that which a *991 reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The trial court, independently assessing the evidence, found general damages for pain, suffering, etc. to be in the amount of $8,000.00. Based on the particular circumstances, of the effect of the particular (minimal) injury on this plaintiff, we find no clear abuse of discretion. A reasonable trier of fact could have reasonably and logically assessed such an award, and it is not our function to determine a more appropriate award, if there is one. The award was, under the circumstances, not abusively low, and we see no reversible error which would require this Court to makejua de novo review of the record. In granting the JNOV, the trial court resolved the inconsistencies in the jury interrogatories. Accordingly, the final assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to appellant.
AFFIRMED.