SUSAN M. CHEHARDY, Judge.
 

 |2On appeal, the defendants seek review of the trial court’s ruling that granted a new trial and awarded additional damages to the plaintiffs. For the following reasons, we reverse the trial court’s ruling and reinstate the jury verdict.
 

 Facts
 

 On March 1, 2004 at 4:00 p.m., Carla Fox backed into Peggy Gereighty’s vehicle while both vehicles were stopped at the signal light at the intersection of Bonnabel Boulevard and 1-10 Service Road in Me-tairie, Louisiana. According to Mrs. Fox, while she was waiting for the light, she decided to continue on Bonnabel Boulevard so she wanted to move out of the left-turn lane into the middle lane. When Mrs. Fox looked into her rearview mirror before backing, she did not see Ms. Ger-eighty’s vehicle behind her. As Mrs. Fox backed up to avoid the car in front of her, she backed into Ms. Gereighty’s vehicle. Mrs. Fox testified that the impact was minor; her two-year-old son, who was also in her vehicle, was not awakened by the impact. Further, her vehicle, a 2003 Mitsubishi Montero, was not damaged by the impact.
 

 | a At trial, Ms. Gereighty stated that, on March 1, 2004, she was waiting at a red light behind an SUV when she saw the vehicle’s reverse tail-lights illuminate. As she watched, the SUV moved towards her and hit her car. Upon impact, she was “pushed back in her seat.” At trial, she stated that, immediately after the accident on March 1, 2004, she “felt the pain in my neck, my upper back, middle back, my lower back, my — both my wrists and my ankles.” Further, Ms. Gereighty opined that the pain was very similar to pain that she suffered after her vehicle was rear-ended by another vehicle on December 23, 2002.
 

 
 *1145
 
 Ms. Gereighty admitted that she refused medical treatment from emergency medical technicians who happened past the accident scene right after the incident. Ms. Gereighty stated that she did not go in the ambulance because she wanted her husband to drive her to the hospital. Ms. Gereighty also admitted that she did not tell the investigating police officer that she was injured and, in fact, the incident report indicates that there were no injuries.
 

 A little more than two hours after the accident, Ms. Gereighty sought medical treatment in the Emergency Room at East Jefferson General Hospital. According to hospital records admitted at trial, Ms. Ger-eighty presented “complaining of multiple areas of pain, primarily the neck and the low back, also both wrists, both elbows, and both ankles.” Dr. Frank Wilson noted that her lumbar spine, ankle and forearm x-rays were normal. However, Dr. Wilson and Dr. Reid, the radiologist, found that her cervical spine x-ray showed degenerative disc changes at C5/6. Dr. Wilson further noted that she exhibited “tenderness to the posterior cervical and lumbar spine with spasm.” His clinical impression was neck, back, wrist and ankle strain. The total hospital charge was $1,269.00.
 

 |4Finally, Ms. Gereighty’s car, a 2001 Infiniti 130, was damaged but drivable.
 
 [1]
 
 While her car was being repaired, Ms. Gereighty rented a vehicle, which Mrs. Fox’s insurance covered in part. According to the receipt introduced at trial, the unpaid portion of the rental car cost was $234.80.
 

 On October 18, 2004, Peggy Gereighty and Tavis Domingue filed suit naming Carla Fox, Syndistar Educational Publishers, Inc. (the vehicle owner) and the liability insurer, General Insurance Company of America.
 
 [2]
 
 Plaintiffs sought damages, “to include physical pain and suffering, mental anguish, permanent disability, medical expenses, past, present and future, loss of income, past, present and future, loss of earning capacity, loss of enjoyment of life, property damages, and loss of consortium, service and society,” which they urged stemmed from Fox’s negligence in backing into Ms. Gereighty’s vehicle.
 

 Following a jury trial in the Twenty-Fourth Judicial District Court for the Parish of Jefferson that concluded on September 17, 2008, the jury completed a Jury Verdict Form. The jury found that Peggy Gereighty sustained injuries in the March 1, 2004 automobile accident.
 
 [3]
 
 The jury
 
 *1146
 
 further found that, although Carla Fox was negligent, her negligence was not the “proximate cause” of Peggy 15Gereighty’s injuries. Further, the jury declined to award Peggy Gereighty general damages but awarded $2,243.00 in special damages. Finally, the jury declined to award general damages to Tavis Domingue, Ms. Ger-eight/s husband. The trial judge made the jury’s verdict the Judgment of the Court on October 14, 2008.
 

 Thereafter, the trial judge granted plaintiffs’ motion for new trial on the basis that the jury verdict was inconsistent. Subsequently, the trial judge awarded general damages of $45,000.00 and special damages of $24,560.32 to Peggy Gereighty and $15,000.00 for loss of consortium to Tavis Domingue. Carla Fox and her insurer filed a timely appeal seeking review of the grant of a new trial and the damage awards.
 

 Law and Discussion
 

 La. C.C.P. arts. 1972 and 1973 govern when the court may grant a motion for new trial. La. C.C.P. art. 1972 provides the peremptory grounds for a new trial: (1) when the verdict or judgment appears clearly contrary to the law and evidence, (2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial, and (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. Moreover, La. C.C.P. art. 1973 provides the trial court with discretionary authority to grant a new trial “in any case if there is good ground therefor, except as otherwise provided by law.”
 

 Granting or denying a motion for new trial rests within the wide discretion of the trial court and its determination shall not be disturbed absent an abuse of that discretion.
 
 Engolia v. Allain,
 
 625 So.2d 723, 729 (La.App. 1 Cir.1993). In considering a motion for new trial, the trial judge is free to evaluate evidence without favoring either party, and may draw his own inferences and conclusions and may evaluate the credibility of witnesses.
 
 Lambert v. State, through Dept. of Transp. & Development,
 
 96-160 (La.App. 5 Cir. 10/16/96), 683 So.2d 839. However, the fact that a determination on a motion for new trial involves judicial discretion does not mean that the trial court can freely interfere with any verdict with which it disagrees.
 
 Wyatt v. Red Stick Services, Inc., et al.,
 
 97-1345 (La.App. 3 Cir. 4/1/98), 711 So.2d 745;
 
 Porche v. Winn-Dixie Louisiana, Inc.,
 
 93-2075 (La. App. 1 Cir. 10/7/94), 644 So.2d 699.
 

 The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury’s responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury’s factual determinations and must be viewed in that light. Thus, the jury’s verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
 

 State, Dept. of Transp. and Development v. August Christina & Bros., Inc.,
 
 97-244
 
 *1147
 
 (La.App. 5 Cir. 2/11/98), 716 So.2d 372, 380-382.
 

 In the instant case, the trial judge found that the jury’s verdict was inconsistent and granted a new trial. In his reasons for judgment, the trial judge, citing
 
 Cox v. Julian,
 
 03-107 (La.App. 5 Cir. 5/28/03), 846 So.2d 986, noted that, “When a jury finds plaintiff suffered injuries in an accident, awards special damages, but fails to award general damages, the verdict is inconsistent.”
 

 While we agree that a jury verdict awarding medical expenses but simultaneously denying damages for pain and suffering will generally be inconsistent in light of the record, we find that, under certain circumstances, the record will support both an award of medical expenses and a concurrent denial of general damages. Wai
 
 nwright v. Fontenot,
 
 00-0492 (La.10/17/00), 774 So.2d 70, 76.
 

 [A] verdict awarding medical expenses yet denying general damages is not per se invalid. While the courts of many states have ^acknowledged that such a verdict can be erroneous, they generally have rejected the factfinder’s determination as to damages only where the failure to award general damages is factually inconsistent with a reasonable reading of the record, giving due deference to the jury’s findings of fact.
 

 Wainwright,
 
 00-492, 774 So.2d at 76. In this situation, the question for the court reviewing the trial judge’s grant of a new trial is determining whether the fact-finder’s verdict was inconsistent and, thus, an abuse of its discretion.
 

 Recently, in
 
 Dubose v. Lemoine,
 
 08-331 (La.App. 5 Cir. 1/13/09), 8 So.3d 57, this Court upheld the trier of fact’s judgment in favor of Ms. Dubose and against Mr. Lemoine and Allstate in the amount of $2,000.00 as “inconvenience damages.” In that case, Ms. Dubose was in her car in a line of vehicles waiting to exit a parking lot in Destrehan. Mr. Lemoine was backing his car out of a parking space and struck Ms. Dubose’s vehicle. She alleged the impact of the parking lot collision aggravated her pre-existing thoracic outlet syndrome, as well as left shoulder, arm, and left cervical injuries, for which she was receiving treatment before the accident at issue here. She also alleged the accident caused her to suffer migraine headaches and caused new injuries to her lower back, feet, and toes. There, as in our case, the plaintiffs treating chiropractor, Dr. Fitch, treated plaintiff up to the time of this accident for her pre-existing neck and back injuries. The trial court opined that,
 

 Although the defendant was at fault in causing this accident, no medical expert testified at trial to establish the causation of plaintiffs alleged new injuries. Since plaintiffs pre-existing neck and back soft tissue injuries already required extensive, recurring medical treatment up to the date of this accident, I found the plaintiffs further medical treatment following this low impact accident to be exaggerated and unrelated. Accordingly, the proof at trial did not establish aggravation of her pre-existing injuries by a preponderance of the evidence.
 

 This Court upheld the verdict on appeal.
 
 Id.
 

 pin
 
 Coleman v. U.S. Fire Ins. Co.,
 
 571 So.2d 213 (La.App. 3 Cir.1990), the Third Circuit found that there was no error in the jury’s award of medical expenses but denial of general damages. There, plaintiff was injured in an automobile collision. While defendant’s vehicle was stopped behind plaintiffs vehicle at a traffic signal, defendant allowed his vehicle to roll forward, striking plaintiffs rear bumper.
 
 Id.
 
 The accident resulted in no damage to either vehicle, but plaintiff went to the
 
 *1148
 
 hospital, where she was examined and released.
 
 Id.
 
 at 215. Following a trial on the merits, the jury awarded plaintiff $300.00 in special damages for medical expenses, but made no award for general damages.
 
 Id.
 
 at 214. The Third Circuit concluded that the jury could have found that, while plaintiff sustained no injuries, she was justified in going to the hospital for an examination following the accident.
 
 Id.
 
 at 215. The Court, thus, concluded that there was no inconsistency in the jury’s award of medical expenses for the hospital visit and denial of an award for pain and suffering.
 
 Id.
 

 Similarly, in
 
 Olivier v. Sears Roebuck & Co.,
 
 499 So.2d 1058 (La.App. 3 Cir.1986), the Third Circuit again affirmed a jury’s award of medical expenses for an examination and denial of general damages where there was serious question as to whether the plaintiff had sustained any injury in the accident. The Court observed that “[t]he jury could have reasonably found that, although Mrs. Olivier did not receive any injuries in the accident, she was justified in getting a check-up.”
 
 Id.
 
 at 1063.
 

 As demonstrated by
 
 Dubose, Coleman,
 
 and
 
 Olivier,
 
 a trier of fact can reasonably reach the conclusion that a plaintiff has proven his entitlement to recover certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant’s negligence.
 

 |flThe reviewing court must always keep in mind that if the findings of the trial court or jury are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882-883 (La.1993).
 

 We have carefully examined the entire record of this case and, although we may have weighed the evidence differently if we had been sitting as the fact-finder, we conclude that the jury’s findings were reasonable in light of the entire record and the verdict was based on a permissible view of the evidence. Further, we cannot say that the verdict of the jury was inconsistent or resulted in a miscarriage of justice. Simply put, there was ample evidence from which the jury could conclude that this low-impact incident resulted in no compensable pain and suffering.
 

 “In a suit for damages, it is the plaintiffs burden to prove the damage he suffered as a result of defendant’s fault[.]”
 
 Brannan v. Wyeth Laboratories,
 
 Inc., 526 So.2d 1101 (La.1988). Here, Peggy Gereighty and Tavis Domingue bore the burden to establish, by a preponderance of the evidence, that they were entitled to general damages for pain and suffering and loss of consortium as a result of this incident.
 

 First, plaintiff introduced testimony and records from Dr. Charles Billings, her treating orthopedist. The evidence reflects that plaintiff began treating with Dr. Billings in May 2003 in response to the December 2002 motor vehicle accident. On May 29, 2003, Ms. Gereighty reported wrist, ankle, neck, middle and lower back pain. Dr. Billings found no objective spasm but noted “Spurling’s test produced neck pain.” Further, Dr. Billings obtained radiographic images that day, which reflected “lumbar spine films show no overt osseous injury” and “C-spine |10films show substantial disc space narrowing C5-6 with anterior and posterior osteophyte formation.”
 

 Dr. Billings also ordered an MRI of the cervical and lumbar spine. On June 3, 2003, Ms. Gereighty underwent the MRIs at Diagnostic Imaging Services (“DIS”). Dr. Michael Voth, a radiologist with DIS,
 
 *1149
 
 found no abnormality in the lumber spine. However, Dr. Voth noted “multifactorial central and bilateral foraminal narrowing at C5-C6,” which reflect “extensive degenerative-type changes” and may also reveal a “slight impingement on the left side of the [spinal] cord.” Dr. Voth also noted “mild central narrowing at C4-C5 primarily related to small midline disc protrusion.”
 

 On July 11, 2003, Dr. Billings’ impression after examination was “cervical disc disease with posttraumatie[sic] exacerbation, lumbar strain.” On February 5, 2004, three weeks before this accident, Ms. Gereighty complained of neck and back pain, with back pain that radiates towards legs. Dr. Billings’ impression remained “cervical disc disease with chronic lumbar strain.” Thus, her treating orthopedist’s records reflect that, less than one month before this incident, Ms. Gereighty was still in active treatment for injury from her December 2002 accident and/or pre-exist-ing degenerative cervical spine disease.
 

 On March 15, 2004, two weeks after the accident in question, Ms. Gereighty presented again with low back and neck pain and “forgetfulness.” Dr. Billings noted “no objective spasm,” and noted that radio-graphs from the day of the accident appeared “normal.” We note that, during the remainder of 2004 and throughout 2005, Dr. Billings’ records indicate that she had “no change neck and back examination” with continued pain and his impression continued to be “cervical and lumbar disc disease,” as it was before this incident.
 

 | nAlthough Ms. Gereighty continued to complain of pain, Dr. Billings’ reports do not reflect objective findings that her preexisting symptoms were exacerbated by the March 2004 wreck. Regarding his notation that Ms. Gereighty was a candidate for surgery, Dr. Billings stated that he would only advise surgery to a patient in this situation, if her complaints of pain could not be eliminated with more conservative methods. To date, Ms. Gereighty has not undergone surgery to repair her cervical spine. Ms. Gereighty discontinued treatment with Dr. Billings in August 2006.
 

 Second, the medical records and testimony introduced at trial reflect that, as late as February 26, 2004, which was just days before this incident, Ms. Gereighty was still receiving physical therapy at Crescent City Physical Therapy for injuries that she sustained in her automobile accident on December 28, 2002. In an assessment by her physical therapist on March 3, 2004, just two days after the instant incident, she attended physical therapy and performed exactly the same exercises that she had performed a few days before the accident.
 

 Although she did complain of increased pain, the physical therapist noted that Ms. Gereighty “continues with good trunk [range of motion] and pelvic positioning.” Based on this evidence, it is reasonable that the trier of fact found that, at the time of the accident, Ms. Gereighty’s injuries from the December 2002 accident had not been resolved and, further, that the March 2004 accident did not exacerbate those pre-existing injuries.
 

 Finally, two months after this incident, Ms. Gereighty began visiting a chiropractor for her lower back pain. She did not seek treatment for her neck pain because she was under an orthopedist’s care for her cervical spine. At her first visit on May 12, 2004, the chiropractor’s treatment notes reveal that Ms. Gereighty presented with complaints of pain in her neck, right and left elbows, wrists, |12buttocks, hips, and legs. She reported that her pain prevented her from exercising, household tasks, and working. Further, walking and
 
 *1150
 
 sitting both increase the pain in her legs and lower back.
 

 On her visit to the clinic the next day, May 13, 2004, Ms. Gereighty reported that she felt “much better” after her adjustment therapy the previous day. On May 31, 2004, Ms. Gereighty is quoted, "I have really noticed an increase in mobility after my adjustments.” Ms. Gereighty continued in chiropractic adjustment therapy at least twice a week until December 27, 2004.
 

 Of further note, Ms. Gereighty testified at trial that she was in an automobile accident on December 23, 2002, when her vehicle was rear-ended at a stop light by another car that was traveling about 35 mph. Further, Ms. Gereighty testified that, on or before September 7, 2005, she fell while walking through debris left in her home after Hurricane Katrina. Moreover, Ms. Gereighty testified, at the time of trial, she had been in automobile accidents, in which her vehicle was rear-ended on March 7, 2006, September 29, 2006, May 25, 2007, and March 19, 2008.
 

 In the case at hand, the jury apparently found that the plaintiff proved that she incurred medical and incidental expenses as a result of the March 1, 2004 accident and awarded damages for those claims but did not find that the plaintiff proved that she experienced exacerbated pain and suffering, or other special damages, because of the incident that Mrs. Fox caused. As we have often observed, we are reluctant to disturb such credibility determinations by the finder of fact.
 
 Arceneaux v. Domingue,
 
 365 So.2d 1330 (La.1979);
 
 Canter v. Koehring Co.,
 
 283 So.2d 716 (La.1973). We find, thus, that the trial court committed error in granting a new trial on an alleged inconsistency.
 

 Furthermore, in our view, the trial judge granted a new trial because he personally disagreed with the amount of the award made by the jury and wished to 113award what he himself believed was just compensation. However, the trier of fact — the jury — made its determinations, and it is not for the trial court or this court, absent evidence of unfairness, mistake, partiality, prejudice, corruption, exorbitance, excessiveness, or a result that is offensive to the conscience and judgment of the court, to disturb them.
 

 In sum, the jury’s verdict in this matter was based on a permissible view of the evidence consistent with the determinations made by the fact-finders in
 
 Coleman
 
 and
 
 Olivier, supra.
 
 We, thus, reinstate the jury’s original award of $2,243.00 in damages to Peggy Gereighty. For the reasons cited herein, the new trial is reversed, and the judgment of the jury is reinstated. Costs are assessed against ap-pellees, Peggy Gereighty and Tavis Do-mingue.
 

 NEW TRIAL REVERSED; JUDGMENT REINSTATED.
 

 [1]
 

 . According to the plaintiff, her car's hood was "crunched up,” and the radiator, front bumper, and front lights were damaged. At trial, the plaintiff submitted a damage repair estimate of $5,193.52. The actual cost of repairing the vehicle was not introduced at trial.
 

 [2]
 

 .
 
 By Joint Motion, Syndistar was dismissed on December 18, 2007.
 

 [3]
 

 . In this case, the completed Jury Verdict Form read as follows:
 

 1). Do you find that defendants, Carla Fox and General Insurance Company of America, were negligent regarding the accident on March 1, 2004?
 

 x YES NO
 

 2). Do you find that defendants' negligence was a proximate cause of the injuries sustained by plaintiffs?
 

 _YES x NO
 

 3). Do you find that Peggy Gereighty was negligent regarding the accident on March 1, 2004?
 

 _YES x NO
 

 4). Did the plaintiff, Peggy T. Gereighty, sustain any damages as the result of the accident on March 1, 2004?
 

 x YES _NO
 

 If you answered "YES” to Question 4, please put the amounts that the plaintiff, Peggy Gereighty, is entitled to for the damages sustained in the accident at issue in the spaces below....
 

 
 *1146
 
 General Damages (Pain & Suffering) $ 0 .
 

 Special Damages (Medical expenses, Property Damages, Lost Wages) $2000,00 + $243.00
 

 5). Did the plaintiff, Tavis Domingue, sustain any damages as the result of the accident on March 1, 2004?
 

 _ YES x NO