BRYAN, Judge.
Martin P. Jones (“Martin”) and Phillip Jones (“Phillip”) appeal from a judgment of the Jefferson Circuit Court (“the trial court”) confirming a judicial sale in a domestic-relations case. We dismiss the appeal as to Phillip and affirm the judgment of the trial court.
On September 13, 2010, the trial court entered a judgment divorcing Candace Joines (“Candace”) and Scott Joines (“Scott”) in the domestic-relations action it had docketed as “Candace Joines v. Scott Joines, DR-09-915.” The divorce judgment contained the following provisions that are pertinent to this appeal:
“ORDERED and ADJUDGED by the Court:
[[Image here]]
“20. That [Candace] shall have the sole use and occupancy of the residence of the parties _ That the said residence of the parties shall be sold within three hundred sixty (360) days from the date of this Final Judgment of Divorce at a private sale and the net proceeds therefrom, after costs of said sale are deducted, shall be divided equally between the parties.
“That in the event said residence is unsold at the end of said period, the Clerk of this Court or her designee or her assigns as set out in writing shall hold a public sale upon affidavit by either party that said residence is unsold and prepayment of publication costs. Each party hereto shall be a competent bidder at same. The net proceeds, after the deduction of costs for said sale, shall be divided equally between the parties.”
(Emphasis added.)
On December 8, 2011, Scott filed an affidavit stating that the residence had not been sold at a private sale within the 360-day period specified by the divorce judgment and requesting that the trial-court clerk sell the residence at a public auction. That same day, Scott prepaid the cost of publishing notice of the public auction. After publishing a notice that the residence would be sold at a public auction on January 12, 2012, in a newspaper of general circulation in Jefferson County on December 17, December 24, and December 31, 2011, the trial-court clerk conducted a public auction on January 12, 2012. Martin, who is not related to either Candace or Scott, bid $370,000 for the residence, which was the highest and best bid. The trial-court clerk accepted Martin’s bid, and Martin paid the trial-court clerk $370,000 on January 12, 2012. Also on January 12, 2012, the trial-court clerk filed her report regarding the sale, which reported that Martin’s bid of $370,000 was the highest and best bid, that Martin had purchased the residence, and that he had paid the trial-court clerk $370,000.
On January 23, 2012, Martin and Phillip filed a motion to intervene (“the motion to intervene”) in case no. DR-09-015 in order to protect their interests with respect to the sale of the residence. Martin and Phillip asserted that Martin, by purchasing the residence at the public auction, “was assisting his son [Phillip] in the way of bridge financing to allow his son to purchase the [residence]”; that the residence *586 was encumbered by a mortgage with an unpaid balance in the amount of approximately $170,000; that, because the divorce judgment stated that the “net proceeds” of the sale were to be distributed to Candace and Scott, the gross proceeds of the sale, i.e., the $370,000 Martin had paid the trial-court clerk for the residence, should be used not only to pay the costs of the sale but also to pay off the mortgage before distribution of the remaining balance to Candace and Scott; and that Martin and Phillip should be allowed to intervene for the purpose of seeking a determination that the gross proceeds of the sale should be used to pay off the mortgage before distribution of any of the proceeds of the sale to Candace and Scott. In support of the motion to intervene, Martin and Phillip cited Woodruff v. Woodruff, 28 So.3d 1149, 1153 (Ala.Civ.App.2009), which, they said, had held that the term “net proceeds” means the gross proceeds of a sale less the costs of the sale and mortgage payoffs. The trial court set the motion to intervene for hearing on January 26, 2012.
On January 31, 2012, Martin and Phillip filed an objection to- the confirmation of the sale (“the objection”). They objected on the grounds that the notice of the sale had omitted any mention of the mortgage encumbering the residence, that that omission had misled them into believing that the residence was free and clear of liens; and that they would be damaged by that omission unless the gross proceeds of the sale were used to pay off the mortgage before any of the proceeds were distributed to Candace and Scott. The trial court set the objection for hearing on February 22, 2012.
The trial court held a hearing regarding the motion to intervene on January 26, 2012, and, on February 3, 2012, granted that motion. However, on February 21, 2012, Candace filed a motion asking the trial court (1) to set aside the order granting the motion to intervene and (2) to confirm the sale (“the motion to set aside and to confirm”). Candace supported the motion to set aside and to confirm with a brief in which she asserted that the trial court did not have subject-matter jurisdiction over the motion to intervene because Martin and Phillip had not paid a filing fee when they filed that motion and that the sale should be confirmed because Martin and Phillip had constructive notice of the existence of the mortgage encumbering the residence when Martin purchased the residence because the mortgage had been recorded in the Probate Court of Jefferson County before the public auction.
On February 22, 2012, Martin and Phillip filed a brief in opposition to the motion to set aside and to confirm in which they asserted that, because the divorce judgment provided that the “net proceeds” of the sale were to be distributed to Candace and Scott, the gross proceeds of the sale should be used to pay off the mortgage before any of the proceeds were distributed to Candace and Scott because, they said, “net proceeds” meant the gross proceeds of the sale less the costs of the sale and the mortgage payoff. In the alternative, they asserted that, if the trial court determined that the “net proceeds” to be distributed to Candace and Scott did not mean the gross proceeds of the sale less the costs of the sale and the mortgage payoff, the sale should be set aside.
Also on February 22, 2012, the trial court held a hearing regarding (1) the motion to set aside and to confirm and (2) the objection. The day after that hearing, Martin and Phillip filed a brief in which they asserted that, based on the holding in Hayes v. Betts, 227 Ala. 630, 634, 151 So. 692, 695 (1933), they were made quasi parties as to matters regarding the sale of the residence by virtue of the trial-court *587 clerk’s accepting Martin’s bid of $370,000 at the public auction or, in the alternative, that Candace had waived her right to object to the motion to intervene by failing to object to it before the trial court had granted it.
On March 8, 2012, Scott filed a motion to order the trial-court clerk to pay the costs of the sale, to pay off the mortgage encumbering the residence, and to distribute the remaining proceeds of the sale in equal shares to Candace and Scott.
On March 14, 2012, the trial court entered an order setting aside its order granting the motion to intervene. On April 5, 2012, the trial court entered a judgment confirming the sale of the residence, ordering the trial-court clerk to execute a deed conveying the residence to Martin, ordering the trial-court clerk to deduct 1% of the $370,000 Martin had paid for the residence as the trial-court clerk’s commission, and ordering the trial-court clerk to distribute the remainder of the $370,000 to Candace and Scott in equal shares. On April 10, 2012, the trial court amended its April 5, 2012, judgment to order the trial-court clerk to execute the deed to Martin and to disburse the funds due Candace and Scott forthwith. On April 11, 2012, the trial-court clerk executed a deed conveying the marital residence to Martin “subject to any and all encumbrances against the property” and delivered the deed to Martin on April 12, 2012.
On May 16, 2012, Martin and Phillip filed a settlement agreement dated April 16, 2012, in which Scott had agreed to pay one-half of the unpaid balance of the mortgage encumbering the residence and Martin and Phillip had agreed to release Scott pro tanto. Also on May 16, 2012, Martin and Phillip filed a notice of appeal to this court from the April 5, 2012, judgment confirming the sale.[1] Their notice of appeal named Candace as the only appellee.
Candace argues that we should dismiss the appeal because, she says, Martin and Phillip’s notice of appeal was not timely filed because, she says, the trial court’s March 14, 2012, order setting aside the order granting the motion to intervene was a final, appealable judgment and Martin and Phillip failed to file their notice of appeal within 42 days after the entry of that judgment. An order denying a motion to intervene is a final, appealable judgment regardless of whether the motion seeks intervention of right, see Thrasher v. Bartlett, 424 So.2d 605, 607-608 (Ala.1982), or permissive intervention, see Universal Underwriters Ins. Co. v. Anglen, 630 So.2d 441, 442 (Ala.1993). However, the trial court’s ruling regarding the motion to intervene was moot with respect to Martin because the trial-court clerk’s acceptance of Martin’s bid in the amount of $370,000 made Martin a quasi party to the proceeding to confirm the sale, and he was entitled to appear and protect his rights in that proceeding regardless of whether the trial court granted or denied the motion to intervene. See Hayes v. Betts, 227 Ala. at 634, 151 So. at 695; and Harduval v. Merchants’ & Mechanics’ Trust & Sav. Bank, 204 Ala. 187, 188, 86 So. 52, 52-53 (1920). In Hayes, the supreme court explained: *588 thorized to make the sale, subject to confirmation by the court in due course, acquires vested rights which are entitled to protection. Thenceforward, he is a quasi party to the proceeding, is bound by the decree of confirmation or rejection, and subject to the orders of the court with respect thereto. 16 R.C.L. 113, § 81; Haralson v. George, 56 Ala. 295 [ (1876) ]. He may, of course, appeal from any final order or decree injuriously affecting his right as purchaser. Glennon v. Mittenight, 86 Ala. 455, 5 So. 772 [ (1889) ]; Blossom v. Milwaukee, etc., R. Co. [68 U.S. 655] 1 Wall. 655, 17 L.Ed. 673 [ (1863) ]. And he is entitled to have the sale confirmed, in the absence of irregularity, misconduct, fraud, mistake, or gross inadequacy of price amounting in itself to fraud. Littell v. Zuntz, 2 Ala. 256, 36 Am. Dec. 415 [ (1841) ]; Cockrell v. Coleman’s Adm’r, 55 Ala. 583 [ (1876) ]; Glennon v. Mittenight, 86 Ala. 455, 5 So. 772; Helena Coal Co. v. Sibley, 132 Ala. [651], 32 So. 718 [ (1902) ].’
*587 “[Tjhis court, in the case of Harduval et al. v. Merchants’ & Mechanics’ Trust & Savings Bank et al., 204 Ala. 187, 86 So. 52, observed: ‘A purchaser at a judicial sale, that is, one whose offer to purchase is accepted by the officer au-
*588 “In 16 R.C.L. page 113, § 81, the rule on the above subject is thus stated: ‘Bidders and purchasers at a judicial sale under a decretal order make themselves parties in interest to the proceedings for some purposes, they were not parties originally. They subject themselves quoad hoc[2] to the jurisdiction of the court in that suit as to all matters connected with the sale or relating to them in the character of purchasers. Accordingly, they have the right to interfere in the proceedings for their own benefit and protection and for the correction of mistakes, and to appear, represent their own interests, and claim at the hands of the court such relief as the rules of equity proceedings entitled them to. They become subject to the future orders of the court, are bound as parties by the decree of the court confirming or setting aside the sale, and can be compelled by summary processes of the court, so long as the court’s control over the cause and the parties continues, to perform their agreement specifically or otherwise. His inchoate rights acquired by bidding off the property entitle the purchaser to a hearing upon the question whether the sale shall be subsequently set aside. But being a party to all matters connected with the sale, the purchaser must take notice of the report of sale, all proceedings with reference thereto, and the confirmation or rejection of the sale.... Bidders and purchasers at judicial sales may at a proper stage of the case appeal from decrees affecting their interests.’ ”
227 Ala. at 634, 151 So. at 695 (emphasis altered).
Thus, because the trial-court clerk accepted Martin’s bid in the amount of $370,000 at the public auction, Martin was a quasi party as to all matters related to the sale of the residence and was entitled to appear and protect his interest with respect to those matters regardless of whether the trial court granted or denied his motion to intervene. See Hayes and Harduval. Moreover, he was entitled to appeal the trial court’s judgment confirming the sale regardless of whether the trial court granted or denied his motion to intervene. Id. The notice of appeal was filed within 42 days of the entry of the April 5, 2012, final judgment confirming the sale. Therefore, with respect to Martin, Candace’s argument that the notice of appeal was untimely has no merit.
*589 Phillip, on the other hand, did not make a bid that was accepted by the trial-court clerk at the public auction. Consequently, he did not become a quasi party regarding matters related to the sale. Id. Therefore, because the trial court did not grant the motion to intervene with respect to him, he did not become a party to the proceeding and thus does not have standing to appeal from the judgment confirming the sale. See Mars Hill Baptist Church of Anniston, Alabama, Inc. v. Mars Hill Missionary Baptist Church, 761 So.2d 975, 980 (Ala.1999). In Mars Hill, the supreme court stated:
“The law in the area of standing for purposes of appeal is well settled. One must have been a party to the judgment below in order to have standing to appeal any issue arising out of that judgment. Triple J Cattle, Inc. v. Chambers, 621 So.2d 1221 (Ala.1993). When a court denies a nonparty’s motion to intervene in an action, that nonparty cannot appeal from the final judgment in that action because [he] never became a party to that action. Duncan v. First Nat’l Bank of Jasper, 573 So.2d 270, 273 (Ala.1990).”
761 So.2d at 980 (emphasis added).
Of course, Phillip had standing to appeal from the trial court’s final, appealable March 14, 2012, judgment setting aside its order granting the motion to intervene, see Universal Underwriters Ins. Co. v. East Cent. Alabama Ford-Mercury, Inc., 574 So.2d 716, 727 (Ala.1990) (affirming denial of nonparty’s motion to intervene); however, the notice of appeal was not filed within 42 days after the entry of that judgment. Consequently, because Phillip did not become a quasi party, because he was not a party with standing to appeal from the final judgment confirming the sale, and because the notice of appeal was untimely with respect to the March 14, 2012, final judgment setting aside the order granting the motion to intervene, we must dismiss the appeal with respect to Phillip. See Hayes; Harduval; Mars Hill; Thrasher, supra; Anglen, supra; and Rule 2(a)(1), Ala. R.App. P. (“An appeal shall be dismissed if the notice of appeal was not timely filed to invoke the jurisdiction of the appellate court.”).
Martin argues that the trial court erred insofar as it ordered the trial-court clerk to distribute the balance of the proceeds of the sale to Candace and Scott after deducting only the trial-court clerk’s 1% commission because, he says, the divorce judgment provided that the “net proceeds” were to be distributed to them and, according to Martin, the term “net proceeds” as used in the divorce judgment meant the gross proceeds of the sale less the costs of the sale and the mortgage payoff. In support of his argument, Martin cites Wood-ruff, supra.
In Woodruff, this court construed the term “net proceeds” as used in the following provision of a divorce judgment:
“ ‘4. The parties jointly own real estate located [on] Willoughby Road, Birmingham, Alabama. The realty shall be placed on the market and sold, with the net proceeds divided with Fifty Percent (50%) to the [wife] and Fifty Percent (50%) to the [husband]. Pending such sale, the [husband] shall be responsible for and pay the mortgage payments, taxes, and insurance due on said realty, and shall indemnify and hold harmless the [wife] therefrom.’ ”
23 So.3d at 1151 (emphasis added). The divorce judgment in Woodruff contained no language indicating the meaning of the term “net proceeds” as used in that judgment. 23 So.3d at 1153. Given the absence of such language, this court held that the term “net proceeds” as used in the divorce judgment in Woodruff meant *590 “ ‘gross proceeds less closing expenses and mortgage payoffs.’ ” Id. (quoting Brown v. Brown, 960 So.2d 712, 715 n. 3 (Ala.Civ. App.2006)).
However, in the present case, the divorce judgment does contain language indicating the meaning of the term “net proceeds” as used in that judgment. The pertinent sentence of the divorce judgment in the present case states: The “net proceeds, after the deduction of costs for said sale, shall be divided equally between the parties.” (Emphasis added.) Thus, the divorce judgment in the present case clearly and unambiguously indicates that the term “net proceeds” as used in that judgment means the gross proceeds of the sale less the costs of the sale only. Accordingly, we conclude that Woodruff is not controlling precedent in the present case.
because we conclude that the divorce judgment in the present case clearly and unambiguously indicates that the term “net proceeds” means the gross proceeds of the sale less the costs of the sale only, we conclude that the trial court did not err in ordering the trial-court clerk to deduct only her 1% commission before distributing the remainder of the proceeds of the sale in equal shares to Candace and Scott. Accordingly, we af-afthe judgment of the trial court.
APPEAL DISMISSED AS TO PHILLIP JONES; AFFIRMED.
THOMPSON, P.J., and PITTMAN J., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. The April 5, 2012, judgment confirming the sale was a final, appealable judgment. See Jetton v. Jetton, 502 So.2d 756, 759 (Ala. 1987); and Taylor v. Taylor, 398 So.2d 267, 269 (Ala. 1981).

. According to Black’s Law Dictionary 1368 (9th ed.2009), "quoad hoc” means "[a]s to this; with respect to this; so far as this is concerned.”