700 So.2d 1163 (1997)
Tyrus D. WHIGHAM
v.
Morgan BOYD, et al.
No. 97-CA-0693.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*1164 Terry A. Bell, The Bell Law Firm, Belle Chasse, for Plaintiff/Appellee.
Wm. Ryan Acomb, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for Defendant/Appellee/Morgan Boyd.
Richard P. Ieyoub, Attorney General, Marsha M. McKendall, Stephen Babin, Assistant Attorneys General, Louisiana Department of Justice, Litigation Division, New Orleans, for State.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
The primary question raised by this appeal is the sufficiency of the constructive notice received by the State of Louisiana, Department of Transportation and Development (hereinafter the "DOTD"), of a dangerous condition caused by problems with the signal light at the corner of Louisiana Highway 23 and Louisiana Highway 406 in Belle Chasse, Louisiana, which condition resulted in a July 21, 1994 accident between a vehicle driven by plaintiff Tyrus Whigham and a vehicle driven by defendant Morgan Boyd.
The trial court found that the DOTD had constructive notice of the dangerous condition of the signal light at the subject intersection by virtue of the fact that it received continuous and repeated complaints and performed frequent repairs on the signal light prior to the accident. As a result, the trial court awarded Whigham $796,715 for damages he received as a result of the accident, including $350,000 for general damages, $400,000 for loss of future wages, and $46,715 for past medical expenses. The trial court found that the malfunctioning signal light was the principal cause of the accident, and held DOTD 80 percent liable for its negligence. The DOTD has appealed the trial *1165 court's finding that it was negligent in causing the accident.
The remaining 20 percent of the negligence not assigned to the DOTD was assigned to Boyd, who the trial court found had entered the intersection under a light which was technically red, although the red lamp failed to illuminate. Boyd claims that the signal light was green when he entered the intersection. Whigham filed a cross appeal, challenging the trial court's assignment of any error to Boyd. Whigham claims that 100 percent of the negligence should be assigned to DOTD because the accident was caused by conflicting green lights.
The final issue raised by the parties relates to the trial court's award of $400,000 in loss of future wages. The DOTD claims that Whigham is not entitled to any award for lost wages because he failed to present medical evidence indicating that he suffers from a residual disability to a reasonable certainty. In his cross appeal, Whigham seeks an increase in the award for loss of future wages. DOTD's negligence in causing the accident
Determination of the first issue turns on a traditional duty-risk analysis, with one twist. Under the provisions of LSA-R.S. 9:2800, public entities in the State of Louisiana may not be held liable for injuries caused by things within their care and custody under either a negligence or a strict liability theory unless the injured party proves three things: (1) that the entity had actual or constructive notice of the dangerous condition prior to the occurrence, (2) that the entity had a reasonable opportunity to remedy the defect, and (3) that the entity failed to remedy the defect.
In a case with facts remarkably similar to the facts presented by the instant case, Rhodes v. DOTD, 95-1848 (La.5/21/96), 674 So.2d 239, the Louisiana Supreme Court set out the plaintiff's burden of proof, in pertinent part, as follows:
To prove negligence under art. 2315 against a thing's owner, plaintiffs must prove that the thing (the traffic signal) created an unreasonable risk of injury that resulted in damage, that DOTD knew or should have known of that risk, and that DOTD failed to render the signal safe or to take adequate steps to prevent the damage. Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982).
...
Generally, to prove strict liability under art. 2317, a plaintiff is relieved of proving that the defendant knew or should have known of the risk involved. However, R.S. 9:2800 (which applies to government defendants such as DOTD) "requires a plaintiff to prove that the public entity has actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had reasonable opportunity to remedy the defect and has failed to do so." Campbell v. Department of Transp. & Dev., 94-1052 p. 5 (La.1/17/96); 648 So.2d 898, 901 (inter quotation marks omitted); See also Bessard v. State, Dept. of Transp. and Development, 94-0589 p. 3 (La.11/30/94); 645 So.2d 1134, 1136. R.S. 9:2800 eliminates the distinction between public bodies' negligence and strict liability.
...
Under either negligence or strict liability theories, the state's duty through DOTD was the same. In this case, DOTD's duty was to keep highways in a reasonably safe condition. See Campbell, p. 5, 648 So.2d at 901; Lewis v. State, Through DOTD, 94-2370 p. 5 (La.4/21/95); 654 So.2d 311, 314. This included a duty in regard to the traffic signal.
It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public.

Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1156 (La.1988).
Id. at 242.
Although the DOTD makes a cursory argument in brief that the condition of the signal light where the accident occurred was not an unreasonably dangerous condition, the real focus of this issue is whether Whigham proved that the DOTD had actual or constructive notice of the condition, as required by LSA-R.S. 9:2800 to support a finding of *1166 liability against a public entity. The trial judge wrote 18 pages of reasons for his judgment, most of which are related to this issue. The reasons indicate that the trial court's decision to hold the DOTD liable is based on his finding that the DOTD had constructive notice of the fact that the equipment controlling the signal light at the subject intersection malfunctioned frequently, as evidenced by the fact that DOTD records show 44 complaints regarding operation of the light, as well as 65 signal and lighting work orders, in the two years prior to the accident. Moreover, the trial court noted that the DOTD had slated the controller for replacement in 1991, and had even scheduled that replacement in 1993, but nevertheless failed to actually perform the work which would have prevented the signal light malfunction prior to the 1994 accident. If the DOTD had timely performed the work, the accident which caused Whigham's injuries might have been prevented, the court indicated. All of these findings were based on the testimony of plaintiff's expert traffic engineering witness, Duane Evans.
The DOTD arguments focus on the claim that DOTD did not receive actual notice of the specific problem with the signal light on the day of the accident until after the accident. Thus, the DOTD claims that it had no actual or constructive notice of the malfunction, and thus cannot be held liable for the accident under LSA-R.S. 9:2800. The brief submitted by the DOTD lists 20 specific instances where maintenance work was done on the signal lights at the intersection in question in the year preceding the accident, apparently to show its good-faith efforts to keep the signal lights operating properly. The bottom line, according to the DOTD, is that it "did not have notice of this particular malfunction on the date of the accident in sufficient time to afford it a reasonable opportunity to repair it."
Our reading of the record supports the trial court judgment. The Louisiana First Circuit Court of Appeal addressed the constructive notice issue in Rhodes v. State DOTD, 94-1758 (La.App. 1 Cir. 12/20/96), 684 So.2d 1134, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487, on remand from the Louisiana Supreme Court's opinion quoted above. In that case, the court found the DOTD liable for the accident, premising that liability on the DOTD's failure to properly fulfill its maintenance responsibilities because it "focused virtually all of its energies and resources on repair work and performed maintenance only as an afterthought when time permitted." Id. at 1143.
Likewise, in the instant case, the DOTD had sufficient notice of the dangerous condition at the intersection where the accident occurred to satisfy the requirements of LSA-R.S. 9:2800. The fact that the DOTD received numerous complaints about the intersection and performed numerous repairs on the equipment controlling the intersection, coupled with the fact that the DOTD had itself scheduled the equipment for replacement long before the accident occurred but had failed to replace the equipment in a timely manner, is sufficient to fulfill the notice requirement. For the same reasons set out in the trial judge's reasons for judgment, we affirm the trial court judgment on this issue.

Liability of Boyd
Both Whigham and Boyd challenge the trial court's assignment of 20 percent liability for the accident to Boyd. The trial court's decision is based on his finding that Whigham entered the intersection under a green light, but that Boyd entered the intersection under a light which was red, but not illuminated. The trial court found also that Boyd was not properly paying attention to the stop light, but was instead focusing on the traffic ahead of him. The trial court judge cited Boyd's testimony to support these findings.
Both Whigham and Boyd claim, however, that the uncontroverted evidence presented at trial indicates that they both had green lights. Boyd cites his own testimony in support of this argument and claims that the trial judge simply misinterpreted the evidence. The testimony indicated that Boyd answered Whigham's question, "Why did your run the red light?," by saying "I didn't have a red light." Boyd claims that the trial judge misconstrued that testimony to mean that none of the lamps on the signal light was *1167 illuminated. Whigham's arguments on this issue are similar. The DOTD should be held 100 percent at fault in causing the accident, Whigham and Boyd claim; none of the responsibility should be assigned to an innocent motorist.
This is a factual finding made by the trial court judge; the extensive reasons for judgment filed by the judge indicate that his decision in this matter was made after consideration of all the pertinent evidence. Moreover, the record is replete with evidence, other than Boyd's statement that he "didn't have a red light" to support the trial court's judgment. Although Boyd did testify that he entered the intersection on a green light, every other witness on the scene of the accident testified that within minutes of the accident, the light controlling the street on which Boyd was travelling was cycling properly, but that the red lamp was not illuminating.
Moreover, the consistent testimony of the expert witnesses indicates that conflicting greens were virtually impossible in a signal light controlled by the type of equipment utilized at the intersection. Evans did testify that conflicting greens were possible, and that the signal light could conceivably be stuck on green, then start cycling properly but not illuminating the red lamp shortly thereafter. However, the "bottom line" according to all of the experts, including Evans, was that conflicting greens is very unlikely. Moreover, we note the fact that a driver has a duty to proceed cautiously when entering an intersection, even when he does have a green light. See Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.), writs denied, 351 So.2d 161, 162 (La.1977). Taken as a whole, the trial court record contains the following evidence: numerous witnesses testified that Whigham had a green light; numerous witnesses testified that the light controlling Boyd's lane of travel was cycling properly, but not illuminating red, within minutes of the accident; and the expert witnesses testified consistently that conflicting greens were virtually impossible. Under the circumstances, the trial court judgment holding Boyd 20 percent liable in causing the accident is supported by the record; it is hereby affirmed.

Damages for loss of future wages
As a result of the accident, Whigham sustained injuries to his neck which eventually required surgery, and which he claims have impacted his ability to work. The trial court agreed, awarding Whigham $400,000 damages for loss of future wages.
At the time of the accident, Whigham was employed as a computer production operator; his duties included data input, compiling production reports, ordering and storing office supplies, and caring for computer equipment and office machines. Whigham testified that his job frequently required him to work with his hands above his shoulders while storing and retrieving records, paper, and other supplies. Moreover, the job required manual dexterity in the hands and fingers in order to do the data input needed to prepare the daily production reports.
As a result of the accident, Whigham testified to experiencing numbness in his right hand and arm, as well as problems with his right leg, all of which grew progressively worse from the time of the accident until the date of his operation on April 5, 1996. Although Whigham continued to work during that period, he testified to increased problems performing the job, especially with miskeying numbers during the data input, which required him to redo his production reports. At the time of trial, approximately two months after his surgery, Whigham had not returned to work.
Two months post-surgery, Whigham testified that he had received no relief from the numbness in his hands after the surgery, nor did he expect to receive any relief. His surgeon, Dr. Mark Hadley, told him that the surgery would arrest the condition, prevent progression, and stabilize his symptoms, but would not restore lost sensation, Whigham said. Because of his condition, he felt that he would be unable to accurately enter data on the computer, resulting in his belief that he would be unable to satisfactorily perform the requirements of his former job. He felt that his former employer would not take him back under the circumstances, he said, citing *1168 another employee's experience where the employer would not take him back after an accident because he was not "100 percent."
Whigham's surgeon, Dr. Hadley, testified by deposition. When the deposition was taken, approximately one month after Whigham's surgery, Dr. Hadley said that he had not assigned Whigham a disability rating because it takes longer than a month to predict a post-surgery patient's long-term prognosis. However, Dr. Hadley noted that Whigham would have potential future problems in his neck at levels below and above the site where the surgery had been performed to fuse a disc. Although he did not give an opinion concerning the possibility of Whigham returning to his former job, Dr. Hadley said that he would be surprised if Whigham was unable to do any kind of work. In fact, Dr. Hadley said that Whigham would probably be able to do something "similar" to his pre-accident job.
Based on Whigham's 1994 salary of $44,699, Whigham's economic expert, Dr. G. Richard Thompson, estimated Whigham's lost future wages between $672,000 and $864,184, depending on whether Whigham could get a job earning minimum wage. After citing the award for loss of future wages awarded by a number of cases, the trial court awarded lost future wages totalling $400,000. His reasons for judgment reveal that he chose a figure well below the lowest figure calculated by Dr. Thompson because he was "not sufficiently sway[ed] ... that Whigham will never be able to return to some type of employment, considering his training, experience, and education, which includes a B.A. degree." On the other hand, the trial judge noted that Whigham presented sufficient evidence to prove that he will never be able to return to his pre-accident employment and thus will not be able to earn as much as he did prior to the accident.
DOTD challenges the award for loss of future wages, claiming that Whigham failed to meet his burden to prove loss of future wages by presenting "medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991). Moreover, the DOTD claims that Dr. Thompson's figures did not "include consideration of any information concerning the probability of rehabilitation and/or plaintiff's return to his former employment." Whigham claims that the trial court's award is inadequate in light of the uncontroverted evidence presented by his economic expert.
We begin our analysis of this issue by noting that any award for loss of future income is "inherently speculative" and "intrinsically insusceptible of being calculated with mathematical certainty." Moranto v. Goodyear Tire & Rubber Co., 25114-CA (La. App. 2 Cir. 5/10/95), 661 So.2d 503, 507. The factors to be considered in calculating an award for loss of future wages are as follows: (1) the plaintiff's physical condition before and after his injury; (2) the plaintiff's past work record and its consistency; (3) the amount the plaintiff probably would have earned but for the injury; and (4) the probability that he would have continued to earn such wages over his work life. Kessler v. Southmark Corp., 25941-CA (La.App. 2 Cir. 9/21/94), 643 So.2d 345, 350.
We find no abuse of discretion in the trial court's award of $400,000 to Whigham for loss of future wages. His reasons for judgment evidence consideration of all the relevant factors. Moreover, we find no merit in the DOTD's implied argument that loss of future wages cannot be set prior to a plaintiff reaching maximum medical recovery. The fact that an injured party has not reached maximum recovery and has not been assigned a disability rating does not defeat his claim for loss of future wages. Such a rule would subvert the public policy favoring the trial of cases as quickly and efficiently as possible. The record in this case contains sufficient evidence to establish to a reasonable certainty that Whigham has sustained a permanent disability which will impact his ability to earn wages in the future as a result of the injuries sustained in the accident. The plaintiff's testimony, coupled with Dr. Hadley's deposition testimony, is sufficient to support the trial court's award. That award is hereby affirmed.

*1169 Conclusion

Accordingly, the trial court judgment awarding Whigham $796,715 against the DOTD is affirmed. The costs of this appeal are assessed to the DOTD.
AFFIRMED.