MARC E. JOHNSON, Judge.
 

 | aThis appeal arises from a judgment on a jury verdict from the 24th Judicial District Court in favor of Plaintiff/Appellee, Debra A. Warden, and against Defendant/Appellee, the State of Louisiana through the Department of Transportation and Development (“DOTD”). For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 According to the pleadings, a collision occurred at the intersection of the West Bank Expressway and Central Avenue in Westwego, Louisiana on June 5, 2001. Plaintiff was traveling westbound on the Westbank Expressway approaching Central Avenue, while one of the defendants, Amy Leblanc Richoux (“Richoux”), was traveling northbound on the same expressway. Plaintiff entered the intersection and was struck in the rear fender by the vehicle driven by Richoux. [;.Both drivers averred that their respectively traffic signals were green at the time they entered the intersection
 

 On May 8, 2002, Plaintiff filed suit against Richoux and her husband, Gerald A. Richoux, State Farm Insurance Compa
 
 *143
 
 ny (Richoux’s insurer), Allstate Insurance Company (UM carrier for Plaintiff), and DOTD. State Farm and Richoux were dismissed from the suit and a directed verdict was entered in favor of Allstate Insurance Company. The City of Westwego and its insurer were made defendants in a supplemental and amending petition. However both parties were subsequently dismissed with prejudice. DOTD was left to be the lone defendant in the matter.
 

 The trial court granted summary judgment in favor of DOTD finding, with regard to the requirement that DOTD had either constructive or actual notice of the defective traffic signal, there was no genuine issue of material fact. This Court reversed the granting of the summary judgment by the trial court on the issue of notice, constructive or actual knowledge, finding that reasonable minds could differ on the issue of whether DOTD had constructive or actual notice of the traffic light malfunction.
 

 At the trial on this matter, which occurred February 9-11 and 13, 2009, the jury found in favor of Plaintiff and against DOTD, further finding no comparative fault on the part of Plaintiff or Richoux. The jury awarded the following damages:
 

 Past/future pain/suffering $ 300,000
 

 Past/future mental anguish $ 100,000
 

 Past/future disability $ 100,000
 

 Past loss of wages $ 279,380
 

 Future loss of wages $ 674,520
 

 Past medical expenses $ 38,000
 

 Future medical expenses $ 53,909
 

 TOTAL $1,545,809
 

 |4DOTD filed a Motion for JNOV/Motion for New Trial and a Supplemental and Amended Motion for JNOV/Motion for New Trial, which were heard and denied on April 7, 2009. From the judgment on the jury verdict, DOTD filed the instant appeal.
 

 ASSIGNMENT OF ERRORS
 

 On appeal, DOTD raises the following errors on appeal: 1) the jury erred/abused its discretion in finding liability on the part of DOTD where Plaintiff failed to prove that the traffic signal at Central Avenue and the West Bank Expressway malfunctioned at the time of the accident in question by showing green lights in opposing directions; further, that such malfunction caused or contributed to this accident, where Plaintiff presented only vague and speculative testimony, and where DOTD clearly demonstrated that the equipment at the intersection was installed years prior to the accident, is still operating the intersection to this date, and there has been no other evidence of a signal malfunction, given the volume of traffic at this busy intersection; 2) in the alternative, the jury erred/abused its discretion in finding that DOTD had prior notice of the alleged malfunction and failed to correct it within a reasonable period of time, pursuant to LSA-R.S. 9:2800 and the provisions of
 
 Netecke v. State ex rel. DOTD,
 
 98-1182 (La.10/19/99); 747 So.2d 489,
 
 reh. den.,
 
 (La.11/19/99), where Plaintiff only presented testimony of an accident at the same intersection fourteen months earlier, with vague allegations that the prior accident was due to conflicting green signals, and where Plaintiff presented no other evidence of any signal malfunction at the same intersection prior to or subsequent to, the accident in question; 3) the jury erred/abused its discretion in finding no comparative fault on the part of Plaintiff, were she clearly testified that she never saw Richoux’s car prior to the accident, and there were no vision obstructions in the intersection; 4) the jury erred/ abused its discretion in finding no comparative fault on the part of Richoux, where she clearly testified that she never saw Plaintiffs car prior to the accident, and there were no vision obstructions in the in
 
 *144
 
 tersection; 5) |,-,the jury erred/abused its discretion in awarding damages for future medical expenses of
 
 $53,000.00,
 
 where no medical practitioner testified that it was medically more likely than not that Plaintiff would require any medical treatment in the future as a result of her alleged injuries; 6) the trial court erred in denying DOTD’s timely Motion for Directed Verdict; and 7) the trial court erred in denying DOTD’s Motion JNOV, and in the alternative, its Motion for New Trial.
 

 LAW AND ANALYSIS
 

 DOTD’s First Assignment of Error
 

 The first assignment of error alleged by DOTD was that the jury erred/ abused its discretion in finding liability on the part of DOTD, where Plaintiff failed to prove that the traffic signal at Central Avenue and the Westbank Expressway malfunctioned at the time of the accident in question by showing green lights in opposing directions; further, that such malfunction caused or contributed to this accident, where Plaintiff presented only vague and speculative testimony, and where DOTD clearly demonstrated that the equipment at the intersection was installed years prior to the accident, is still operating the intersection to this date, and there has been no other evidence of a signal malfunction, given the volume of traffic at this busy intersection.
 

 The police report of Captain Bennie Col-lura, the officer who investigated the accident, indicates that both drivers and a witness to the accident reported the signal lights were green in both directions. Further, the record contains the deposition of two witnesses to the accident. Leroy Schouest, a witness to the accident, gave a statement at the scene and a subsequent deposition in which he | (¡stated that the signal lights were green in both directions. Corey Ardoin, also a witness to the accident, testified that both signal lights controlling the intersection were green at the same time when the accident occurred. Mr. Ardoin, a nearby resident who is familiar with the intersection, also testified that the malfunction had happened on pri- or occasions.
 

 DOTD presented Steven Strength’s deposition. Mr. Strength testified that he has held the position of district traffic operations engineer for DOTD since 1991. His job description includes responsibility for the crews that maintain the traffic signals. His opinion is that it is not possible for both the signal lights to be green at the same time. Mr. Strength explained that the traffic signal has a conflict monitor as a backup device which causes the lights to flash in the event of a malfunction while it performs a diagnostic test.
 

 Conversely, Plaintiff submitted an affidavit from Dr. Peter Parsonson, an expert in civil and environmental engineering, specifically in the area of traffic signalization, in support of her position. Dr. Par-sonson reviewed the depositions of Captain Collura, Antonio Chacon, Steven Strength, Debra Warden and Richoux along with all of the exhibits. He further reviewed DOTD’s traffic signal inventory sheets, the signal and lighting work order sheets, and other documents presented as evidence in this case. Ultimately, Dr. Parsonson opined that “to a reasonable degree of engineering probability and certainty, .... this kind of malfunction has been known to occur from time to time and that the conflicting greens testified to by the two parties to this crash could well have occurred despite the presence of a conflict monitor in the cabinet.”
 

 Fact finding is a province of the jury.
 
 Gereighty v. Fox,
 
 09-395 (La.App. 5 Cir. 11/24/09); 28 So.3d 1143. A reviewing court may not set aside a trial court’s
 
 *145
 
 finding of fact in the absence of manifest error or it is clearly |7wrong.
 
 Linnear v. CenterPoint Energy Entex/Reliant Energy,
 
 06-3030, p. 7 (La.9/5/07); 966 So.2d 36, 44. Where there is conflicting testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Breach of a duty and the cause in fact of the harm are factual questions to be determined by the factfinder.
 
 Id.
 

 The jury heard the testimony, evaluated the credibility of the witnesses and weighed all of the evidence. From our review, we find that the jury could reasonably have concluded that the traffic signal was malfunctioning, and the malfunctioning light was a cause-in-fact of the accident. Thus, we find that the jury did not commit manifest error in finding DOTD liable. Accordingly, DOTD’s first assignment of error is without merit.
 

 DOTD’s Second Assignment of Error
 

 The second assignment of error by DOTD alleges that in the alternative, the jury erred/abused its discretion in finding that DOTD had prior notice of the alleged malfunction and failed to correct it -within a reasonable period of time, pursuant to LSA R.S. 9:2800(C) and the provisions of
 
 Netecke v. State ex rel DOTD, supra,
 
 where plaintiff only presented testimony of an accident at the same intersection fourteen months earlier, with vague allegations that the prior accident was due to conflicting green signals, and where plaintiff presented no other evidence of any signal malfunction at the same intersection prior to or subsequent to, the accident in question.
 

 In actions against a public entity, the plaintiff must establish that the thing which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, | gthat defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiffs injuries. La. R.S. 9:2800;
 
 Fuselier v. Matranga,
 
 01-721, p. 5 (La.App. 5 Cir. 11/27/01); 803 So.2d 151, 154-155;
 
 writ den.
 
 01-3393 (La.3/15/02); 811 So.2d 908;
 
 Warden v. Richoux,
 
 06-702 p. 7 (La.App. 5 Cir. 2/27/07); 952 So.2d 828, 831.
 

 “Constructive notice shall mean the existence of facts which infer actual knowledge.” La. R.S. 9:2800(D). Constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.
 
 Blount v. East Jefferson General Hosp.,
 
 04-407, p. 5 (La.App. 5 Cir. 10/12/04); 887 So.2d 535, 538;
 
 Warden,
 
 06-702 at 7; 952 So.2d at 832.
 

 The record indicates that Captain Collu-ra testified that he made “three to five” reports to DOTD about the malfunctioning traffic signal light. On each occasion, a representative from DOTD came out to investigate. The position of DOTD’s investigator was that it was impossible for the signal lights to be green in both directions at the same time, dismissing reports from citizens. Captain Collura testified that after “hearing the same excuse from the State,” he wrote a report in January of 2001 about the continuing malfunction of the light. The report was filed with the City of Westwego and the State. Captain Collura further testified that he personally spoke with the engineering department of the State about the malfunctioning light at that time. DOTD dis
 
 *146
 
 patched an engineer who reset the traffic signal.
 

 Additionally, the police report in the record supports Captain Collura’s testimony regarding the fact that both drivers and a witness to the accident reported |3the signal lights was green in both directions. Further, the record contains the deposition of two witnesses to the accident. Leroy Schouest gave a statement at the scene and a subsequent deposition in which he stated that the light was green in both directions. Corey Ardoin testified that both signal lights controlling the intersection were green at the same time the accident occurred. Mr. Ardoin, who lives nearby and is familiar with the intersection, also testified that the malfunction had happened on prior occasions.
 

 Antonio Chacon, the owner of Oscar’s Auto Service located on the corner of the Westbank Expressway and Central Avenue, gave a deposition in which he testified that he personally observed malfunctions of the traffic signal at that corner. Mr. Chacon stated that he witnessed “some” accidents caused by the light showing a green signal in both directions on at least three occasions. He further testified that he had also seen repair trucks attempting to repair the malfunctioning traffic signal before June 5, 2001.
 

 The plaintiff introduced documents relating to the maintenance and repair of the traffic signal at the intersection of West-bank Expressway and Central Avenue. Those documents date from May 2000 to December 2001 and show that on several occasions the traffic signal malfunctioned, causing the signal lights to flash rather than sequence as programmed or go out completely. On several occasions the lights were “stuck” on one color and not changing, although it is not clear from the report on which color the signal light was stuck. A report on June 10, 2001 shows that a colony of ants had destroyed the insulation on the signal cable causing a total malfunction of the traffic signal. It was necessary to repair the wiring in order to restore the traffic signal to its programmed sequence.
 

 No bright-line rule has developed in the jurisprudence concerning how many times a traffic signal light must malfunction and be reported before DOTD has | ^constructive notice that it should be replaced. However, the following cases give this court guidance on the factors to weight and consider in determining whether the jury manifestly erred in determining that DOTD had constructive notice.
 

 In
 
 Whigham v. Boyd,
 
 97-0693 (La.App. 4 Cir. 10/1/97); 700 So.2d 1163, DOTD was assessed with comparative fault because the court found that it had constructive notice of a malfunctioning signal light. In
 
 Whigham
 
 there had been forty-four complaints and sixty-five repair work orders for the signal. Additionally, replacement of the equipment was scheduled long before the accident occurred. The court found that DOTD’s failure to replace the signal in a timely manner was sufficient to fulfill the constructive notice requirement.
 
 Id.,
 
 97-0693 at p. 5; 700 So.2d at 1166.
 

 In
 
 Howard v. Derokey,
 
 98-0893 (La. App. 4 Cir. 2/10/99); 729 So.2d 654, the City of New Orleans was held liable for a malfunctioning signal light. The court concluded that the City had constructive notice because there had been nine service calls on the light within five days of the accident and a repair was made two hours before the collision.
 

 Our reading of the record, in conjunction with jurisprudence, supports the conclusion that the jury did not manifestly err in finding that the complaints and/or work orders on this signal light in question, placed DOTD on constructive notice that
 
 *147
 
 something more than simple repairs were necessary to prevent further malfunctions at this busy intersection. Accordingly, DOTD’s second assignment of error is without merit.
 

 DOTD’s Third Assignment of Error
 

 DOTD’s third assignment is whether or not the jury erred/abused its discretion in finding no comparative fault on the part of Plaintiff, where she |n clearly testified that she never saw Richoux’s car prior to the accident, and there were no vision obstructions in the intersection.
 

 A motorist is required to maintain reasonable vigilance or “to see that which he should have seen” and to exercise reasonable care.
 
 Doyle v. McKinney,
 
 98-1102, p. 5 (La.App. 4 Cir. 4/7/99); 732 So.2d 128, 131. A driver has a duty to control his vehicle and to maintain a proper lookout.
 
 Andrus v. State,
 
 476 So.2d 1077, 1079 (La.App. 3 Cir.1985). It is well established that a driver of an automobile is under a never ceasing duty to exercise reasonable care under the circumstances.
 
 Johnson v. Safeway Insurance Co.,
 
 98-920, p. 3 (La.App. 3 Cir. 1/6/99); 741 So.2d 32, 33,
 
 citing Baach v. Clark,
 
 442 So.2d 514 (La.App. 5 Cir.1983).
 

 A trier’s findings as to percentages of fault are factual and, in the absence of clear or manifest error or an abuse of discretion, must be upheld on appeal.
 
 Benoit v. Hartford Casualty Insurance Company,
 
 478 So.2d 707, 710 (La.App. 3 Cir.1985),
 
 writ denied,
 
 480 So.2d 745 (La.1986);
 
 Triangle Trucking Company v. Alexander,
 
 451 So.2d 638, 642 (La. App. 3 Cir.1984).
 

 Captain Collura testified that because he was unable to determine whether either vehicle was at fault in the accident, he did not issue a citation to either driver. After review of the other evidence presented during trial, the jury found that Plaintiff
 

 was not at fault and found DOTD to be 100% at fault. We do not find that this allocation of fault was manifestly erroneous. Accordingly, DOTD’s third assignment of error is without merit.
 

 DOTD’s Fourth Assignment of Error
 

 DOTD’s fourth assignment is whether or not the jury erred/abused its discretion in finding no comparative fault on the part of defendant, Amy Richoux, | i2where she clearly testified that she never saw plaintiffs car prior to the accident, and there were no vision obstructions in the intersection.
 

 As previously stated, a trier’s findings as to percentages of fault are factual and, in the absence of clear or manifest error or an abuse of discretion, must be upheld on appeal.
 
 Benoit v. Hartford Casualty Insurance Company, supra.
 

 As discussed earlier, Captain Collura testified that because he was unable to determine whether either vehicle was at fault in the accident, he did not issue a citation to either driver. After review of this testimony and the other evidence presented during trial, the jury found that Richoux was not at fault and found DOTD to be 100% at fault. We do not find that this allocation of fault was manifestly erroneous. Accordingly, DOTD’s fourth assignment of error is without merit.
 

 DOTD’s Fifth Assignment of Error
 

 DOTD’s fifth assignment of error is whether or not the jury erred/abused its discretion in awarding damages for future medical expenses of $53,000.00, where no medical practitioner testified that it was medically more likely than not that plaintiff would require any medical treatment in the future as a result of her alleged injuries.
 

 An award of future medical expenses is justified if there is medical testimony that they are indicated and setting
 
 *148
 
 out their probable cost.
 
 Hanks v. Seale,
 
 04-1485, p. 16 (La.6/17/05); 904 So.2d 662, 672. Nevertheless, when the record establishes that future medical expenses will be necessary and inevitable, courts should not reject the award because the record does not provide the exact value, if the court can determine from the record, past medical expenses, and other evidence a minimum amount that reasonable minds could not disagree would be required. |
 
 \%Levy v. Bayou Indus. Maintenance Services, Inc.,
 
 03-0037, p. 9 (La.App. 1 Cir.9/26/03); 855 So.2d 968, 975,
 
 writs denied,
 
 03-3161, 03-3200 (La.2/6/04), 865 So.2d 724 and 727. In such a case, the court should award all future medical expenses that the medical evidence establishes that the plaintiff, more probable than not, will be required to incur.
 
 Hymel v. HMO of Louisiana, Inc.,
 
 06-0042, pp. 26-27 (La.App. 1 Cir.11/15/06); 951 So.2d 187, 206,
 
 unit denied,
 
 06-2938 (La.2/16/07), 949 So.2d 425. Although future medical expenses must be established with some degree of certainty, they do not have to be established with absolute certainty, as an award for future medical expenses is by nature somewhat speculative.
 
 Grayson v. R.B. Ammon and Associates, Inc.,
 
 99-2597, p. 35 (La.App. 1 Cir. 11/3/00); 778 So.2d 1, 23,
 
 units denied,
 
 00-3270, 00-3311 (La.1/26/01); 782 So.2d 1026, 1027.
 

 In the matter before this Court, Plaintiff presented the testimonies of Dr. Thomas Irwin, Dr. Steven Atkins, and Dr. William Knight. These testimonies were unrebut-ted by DOTD during trial. Of the testimonies presented, the testimonies of Dr. Irwin and Dr. Knight are pertinent to the issue of the award of future medical expenses.
 

 As for Plaintiffs long-term prognosis, Dr. Irwin stated that confirmed that it is more likely than not that Plaintiff suffers from both cervical vertigo and aggravation of her Meniere’s disease. It was Dr. Irwin’s expert opinion that, as a result of the accident, Plaintiffs condition will not improve significantly. In addition to this testimony, Dr. Knight specifically testified that his treatment would continue into the future as Plaintiffs medical treatment would “go on and on indefinitely.” The costs of this future care can be derived from the billing records on file.
 

 | MBased on Dr. Irwin’s and Dr. Knights’s testimonies, we conclude that the jury was not clearly wrong in finding that Plaintiff was entitled to an award of future medical expenses, as the testimonies clearly indicate that future medical treatment will be required. Although Plaintiff failed to present any evidence as to the specific cost of such future treatment, as previously stated, it is proper for the trial court to determine future medical expenses on the basis of the record, past medical expenses, and other evidence.
 
 Levy,
 
 03-0037 at 9,
 
 855
 
 So.2d at 975. There were medical bills submitted into evidence of Plaintiffs past medical costs, which could have been used to determine the future medical costs. Therefore, we find no error in the jury’s award of future medical expenses in the amount of $53,000.00.
 

 DOTD’s Sixth Assignment of Error
 

 Pursuant to LSA-C.C.P. art. 1810, a party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefore. The order of the court granting a motion for a direct
 
 *149
 
 ed verdict is effective without any assent of the jury. LSA-C.C.P. art. 1810.
 

 The trial judge has much discretion in determining whether or not to grant a motion for directed verdict.
 
 Delaney v. Whitney National Bank,
 
 96-2144, pp. 9-10 (La.App. 4 Cir. 11/12/98); 703 So.2d 709, 717. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted |1fiwhen, after considering all evi-dentiary inferences in the light most favorable to the non-moving party, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion.
 
 Thomas v. A.P. Green Industries, Inc.,
 
 05-1064, p. 19 (La.App. 4 Cir. 5/31/06); 933 So.2d 843, 858. If there is substantial evidence opposed to the motion,
 
 i.e.,
 
 evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury.
 
 Id.
 

 A Motion for Directed Verdict should be granted when, after considering all eviden-tiary inferences in the light most favorable to the mover’s opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict.
 
 Davis v. J.C. Penney Stores,
 
 05-881, p. 11, (La.App. 5 Cir. 1/11/06); 930 So.2d 130, 136.
 

 The record in the instant case shows that the Plaintiff offered evidence of fault on the part of DOTD for failing to maintain the proper functioning of the traffic lights at the intersection of Westbank Expressway and Central Avenue. The record contains sufficient evidence on the issue of fault for reasonable and fair-minded jurors to reach different conclusions. We find that the motion for a directed verdict was properly denied. Accordingly, we find the sixth assignment of error to be without merit.
 

 DOTD’s Seventh Assignment of Error
 

 DOTD’s seventh assignment alleges that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict (JNOV) and Motion for New Trial.
 

 The standard of review for determining whether a JNOV should be granted was thoroughly explained in
 
 Corso v. Laborde,
 
 05-511, p. 4 (La.App. 5 Cir. 5/2/06); 927 So.2d 567, 569,
 
 citing Martin v. Heritage Manor South,
 
 00-1023 (La.4/3/01); 784 So.2d 627, 631, as follows:
 

 The motion [for JNOV] should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motions should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that “when there is a jury, the jury is the trier of fact.” (citations omitted).
 

 Based upon the record and resolving all reasonable inferences and factual questions in favor of the non-moving party, a reasonable person could have determined that the traffic signal was malfunctioning and was the cause-in-fact of the accident. Thus, the jury’s determination that DOTD was negligent was justified. Therefore,
 
 *150
 
 the trial court did not err in denying DOTD’s Motion for JNOV.
 

 Granting or denying a motion for new trial rests within the wide discretion of the trial court, and its determination shall not be disturbed, absent an abuse of that discretion.
 
 Gereighty v. Fox, supra.
 
 The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. A motion for a new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury’s factual determinations and must be ■viewed in that light. Thus, the jury’s verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
 
 Id.
 

 Based upon the evidence presented at trial, we do not find that the jury’s factual determinations were manifestly erroneous. As a result, we also do not find 117that the trial court erred by denying DOTD’s Motion for New Trial on the basis that the verdict appears clearly contrary to the law and the evidence.
 

 DECREE
 

 For the foregoing reasons, the judgment on the jury verdict is affirmed and the awards are affirmed. DOTD is to bear the costs of the appeal.
 

 AFFIRMED.